[Civ. No. 8310. First Appellate District, Division One.—September 15, 1932.]

HAROLD McALISTER, Respondent, v. MARK LIGHT-BURN, etc., et al., Appellants.

Frank L. Simons for Appellants.

William R. Elam for Respondent.

LAMBERSON, J., *pro tem.*—Action upon a promissory note for the principal sum of $7,500, dated September 14, 1927, payable ninety days after date, executed by the defendants and appellants to plaintiff, who is the respondent herein.

The appellants first filed separate answers, each alleging: First, that he had received no consideration for the execution of the note; and second, that the note was given as security against liens that might be filed against a certain apartment house and premises known as "Elite Arms", situated at 258 South Hudson Street, city of Pasadena, and that it was verbally understood and agreed between the makers and payee that upon the expiration of thirty-five days after the completion of said premises, the plaintiff would return the note to the makers, provided no liens had, in the meantime, been filed or paid by plaintiff. Each answer set up a further defense that the plaintiff had failed to comply with the provisions of an agreement whereby, in consideration of the assignment of a note for the sum of $35,000, secured by a deed of trust upon the property upon which the Elite Arms was to be constructed, the plaintiff had agreed to pay the sum of $27,500, and that the plaintiff had failed to make the final payment of $7,500, and had failed to perform other provisions of such agreement. Attached to each answer, and designated exhibit A, was a written agreement, dated September 14, 1927, which provided, so far as material here, as follows: "It is hereby mutually agreed between the undersigned, in order to facilitate the clearing up of the final claims against that certain apartment house known as the 'Elite [Arms]', that Harold McAlister shall this day advance the sum of $7,500.00 to be deposited with the Aetna Bonding Company to be used by them to pay the accounts contracted in the erection of the building. That as evidence of the said advance the said M. Lightburn and Harry Thompson will sign a note for the same amount in favor of said McAlister, due in 90 days.

After the time for filing liens shall expire the parties hereto will settle all matters between them.''

The case came on for trial upon the issues made by the complaint and answers on June 21, 1928, and after testimony had been taken, and the case had been submitted for decision, the court, on June 28, 1928, granted to the defendants leave to file an amended answer and counterclaim. On July 26, 1928, the case again went to trial upon the issues advanced by the amended pleadings. It was again submitted, but later, upon application of the plaintiff, the case was reopened for the purpose of presenting and receiving further evidence, and a further hearing was had on March 25, 1929. On September 18, 1929, the court filed its findings of fact, and entered judgment in favor of plaintiff for the principal sum named in the promissory note, with interest as prayed.

The facts, as presented to the trial court at the various hearings, were as follows: For a short time prior to March 4, 1927, one Fred W. Lunbeck was the record owner and had an equitable interest in certain property in the city of Pasadena situated at No. 258 South Hudson Street. Being desirous of improving the property, by the construction of an apartment house, and in order to secure to himself the value of the equity which he had therein, Lunbeck succeeded in negotiating a first deed of trust in favor of the Bond Investment Company to secure the payment of a promissory note for $90,000, and arranged to execute a second deed of trust for the purpose of securing a promissory note for the principal sum of $35,000 to appellants, who were ostensibly the contractors for the construction of the apartment house.

Plaintiff was approached by the persons mentioned, or by others who were acting in their behalf, who were endeavoring to arrange for the financing of the transaction, and the second note and deed of trust were offered for sale to plaintiff who, on March 4th entered into a written agreement with Lunbeck, under which agreement plaintiff agreed to buy the promissory note for $35,000 with the deed of trust securing the same, and to pay therefor the sum of $20,000 in installments of $5,000 each, to Aetna Casualty and Surety Company, to be used according to a schedule of payments as they became due to the contractor. As fur-

ther consideration, the plaintiff agreed to convey by deed, a certain lot on Las Palmas Street in the city of Los Angeles, which will be hereafter referred to as the Las Palmas lot, and upon the security of which lot plaintiff was to loan Lunbeck the sum of $7,500, to be secured by a first deed of trust, such loan to be made if necessary to complete the building; the lot to be conveyed to Lunbeck within thirty-five days after notice of completion of the apartment house. Whether or not the note for $35,000 and the deed of trust securing the same were in existence at the date of the execution of the promissory note is subject to some doubt, but the matter is not important. In consideration of the sum of $20,000 in cash, and the lot described, Lunbeck sold the $35,000 note to plaintiff. Several days later, there appearing to have been some dissatisfaction on the part of plaintiff as to Lunbeck's responsibility, a meeting was held at which there were present besides Lunbeck and the parties to this . action, several other persons who were either interested in, or were advisors in the affair, and on March 8th or 9th, as a result of the conference, it was agreed that appellants who were the payees to be named in the promissory note of $35,000, agreed to sell said note and the deed of trust securing the same to plaintiff for the sum of $23,000; $3,000 of said sum being credited as interest on the note; and as further consideration for such sale, plaintiff agreed to convey to appellants, lot 11 of St. Albans Lake Place Tract, and twenty acres of land near Chino, in place of the Las Palmas lot described in the Lunbeck agreement. On March 8 or 9, 1927, the deed of trust and note were placed in escrow, and about March 10th, the deed of trust was recorded and delivered to plaintiff. On March 9th, the appellant Lightburn signed escrow instructions which he delivered to the escrow agent with a deed from Lunbeck conveying an undivided two-thirds interest in the Hudson Street property upon which the apartment house was to be constructed, to Lightburn's wife, Laura May Lightburn, and an undivided one-third interest to one Blanche Miller, wife of Herman Miller, who appears to have been at one time or another, a partner with appellants in the ownership of the. apartment house property, said conveyance from Lunbeck to be subject to the two deeds of trust mentioned.

Lunbeck also signed the escrow instructions, and deposited his deed therewith.

Thereafter, plaintiff made payment of the installments, according to the agreement, up to a total of $20,000. During the month of May following, he asked appellants for directions in regard to executing a deed to the St. Albans property, and was finally instructed by the appellants to execute the deed to Laura May Lightburn. This he did, and later she appears to have conveyed the lot to said Blanche Miller. The lot was thereafter used by the Millers, apparently for the purpose of obtaining the execution of a bond for the benefit of themselves. Mrs. Lightburn testified that she executed the deed to Mrs. Miller upon the request of her husband.

In the month of September following, negotiations were begun among the parties for an advance or loan from plaintiff of the sum of $7,500, in order to pay a balance on account of claims against the apartment house. Various papers were executed, including several promissory notes, but after their delivery to McAlister, he became dissatisfied with the actions of the appellants in connection with the execution of a deed of trust upon property other than that upon which they had agreed during their negotiations, and he returned the promissory notes to the appellants. Finally, on September 14, 1927, he agreed to accept an unsecured promissory note from appellants for the sum of $7,500, which is the note in dispute in this action, and paid them therefor the sum of $7,500 by cashier's check.

There appears to have been some difficulty among the parties prior to September 14th, and during the negotiations concerning the $7,500 note, due to the fact that the appellants claimed McAlister was obligated under the contract of March 4th between himself and Lunbeck, to advance to them $7,500 as part of the original purchase price. The agreement which was executed on September 14th has already been quoted herein.

By their amended answer and counterclaim, appellants allege want of consideration, and the execution of the note simply as security against the placing of liens upon the apartment house, together with the promise of the respondent to return the note in the event that liens were not filed, and then by way of counterclaim, appellants allege the exe-

cution of the written agreement with Lunbeck, which is made a part of the counterclaim, setting up the contention that Lunbeck, in executing the agreement, was acting for and as the agent of appellants, and that the respondent was fully advised of such agency; that respondent agreed to transfer the Las Palmas lot to Lunbeck, and to thereafter loan to Lunbeck the sum of $7,500 thereon; that at all times appellants were the contractors described in said agreement to erect said apartment house; that respondent has never delivered a deed to the Las Palmas lot to Lunbeck or defendants; that for the purpose of paying final claims against the building, defendants requested plaintiff to loan to them the sum of $7,500 upon the lot, which plaintiff should transfer to them, but he refused to transfer the lot, or make the loan secured by the first deed of trust referred to in the Lunbeck agreement; that plaintiff compelled them to execute the promissory note which is the subject of the action, and loaned them $7,500 on such note; that the Las Palmas lot was of the reasonable market value of $12,000, and by reason of plaintiff's breach of the agreement the defendants have been damaged in that sum.

The court, in substance, found that the defendants received a consideration of $7,500 in cash for the execution of the note; that it was not given as security against liens, or to be returned to appellants in the event that no liens were filed against the building; that it is not true that plaintiff agreed to advance the sum of $27,500; that on March 8, 1927, a written agreement was entered into between plaintiff and the defendants, whereby defendants sold the $35,000 note to plaintiff, who was to pay therefor the sum of $23,000 cash, and convey to defendants, lot No. 11 of St. Albans Lake Place Tract, together with twenty acres of land near Chino; that Lunbeck executed the $35,000 note to defendants in order that they could indorse it to plaintiff without recourse; that plaintiff conveyed said lot to Laura May Lightburn, with the knowledge and consent of the defendants; that defendants declined to accept a conveyance of the Chino land, and by agreement with them plaintiff gave them in lieu thereof, a credit of $2,500 on the $35,000 note, and defendants accepted such credit; that plaintiff made his payments of the sum of $20,000 in pursuance of the agreement of March 8th with defendant, and

not in pursuance of the terms of the agreement with Lunbeck; that it is untrue that defendants executed the promissory note now before the court for the purpose of guaranteeing plaintiff against the payment of liens that might be filed against the Elite Arms, but executed it in accordance with the written agreement of September 14, 1927, and received therefor a consideration of $7,500 in cash; that it is not true that the $7,500 note was procured by fraud or false representations; that it is not true that Lunbeck, in executing the agreement of March 4, 1927, was acting for or on behalf of, or as agent for defendants, and that he had no other interest in said transaction; that it is true that plaintiff never delivered a conveyance of the Las Palmas lot to defendants, but it is not true that plaintiff did not deliver any other lot to defendants.

The court awarded judgment to plaintiff for the principal sum, in addition to attorney's fees and interest as prayed for, and found that defendants were not entitled to recover anything on their counterclaim. ▉ We have carefully read the entire record, and are of the opinion that the evidence fully supports the findings and conclusions of the court. No matter whether we consider that Lunbeck was acting on behalf of the appellants in entering into the contract of March 4, 1927, or independently for himself, as the court found, we have ample support for the conclusion that on March 8th the appellants and respondent, independently of Lunbeck, closed a different agreement upon which all of them thereafter acted. In neither of these agreements was the payment of the additional sum of $7,500 to be a part of the purchase price, but on the other hand, it was to be loaned upon the security of a lot of land to be conveyed to Lunbeck, or to appellants, according to whichever person or persons were parties to the contract, and upon such lot the person to whom the loan was to be made was to execute a deed of trust to the respondent.

The evidence also satisfactorily supports the conclusion that the parties mutually agreed to the substitution of what was considered by them a more valuable lot in St. Albans Lake Place Tract, for the Las Palmas lot described in the Lunbeck agreement, and that by their own acts in having the lot conveyed to Mrs. Lightburn, appellants rendered it impossible, and placed it beyond their power to execute a

deed of trust upon the St. Albans lot to respondent. That lot has never been reconveyed, but was retained by the appellants, or by persons to whom they transferred the property, who have had the advantage at all times during the pendency of the proceedings of the ownership thereof. The evidence is clear that in executing the agreement of September 14, 1927, which was pleaded in each of their original answers, the appellants contemplated that respondent would pay to them the sum of $7,500 in cash, which would be used by them in paying outstanding claims, and that the giving of the note was not merely a gesture or for the purpose of guaranteeing to respondent that he would not be compelled to pay any liens upon the Hudson Street property.

While there may be a conflict of evidence as to various issues, and the facts may be enshrouded in some doubt, which is often the case where litigants have frequently substituted and changed agreements and deals, and particularly in an instance where they have endeavored to draw a number of legal instruments without expert advice, the facts are so well established, as found by the court, that the appellate court has no authority to say that the judgment is not supported by the findings, or that the findings are not supported by the evidence.

The appellants, as witnesses, contradicted themselves and each other upon material matters, both in the course of the trial and in depositions, and in other actions in which the appellants were witnesses, and to such a degree that the court had good reason to refuse to give credence to their testimony. In addition to that situation, two of their witnesses so discredited themselves upon their examination during the trial, that the court, upon motion of attorneys for the appellants, struck their testimony from the record, all of which justified the trial court in its observation that the appellant had presented so many various and conflicting defenses in the action that the court was inclined to regard with suspicion their good faith in the premises.

It may be remarked that in no place does it appear that Lunbeck ever assigned his interest in the contract of March 4, 1927, to appellants, or to any other person, which fact tends to support the conclusion that the appellants, as well as the respondent, treated Lunbeck's contract as being of no further force or effect after they had concluded their

agreement of March 8th, which latter agreement seems to have controlled their actions thereafter. Even if the court had accepted the agreement of March 4th at its face value, and had assumed that Lunbeck was acting as the agent or "dummy" of the appellants, such conclusion would not preclude the further inference from the facts as they appeared at the trial, that the agreement of March 4th was replaced by another agreement, either written or verbal, entered into between respondent and appellants, and by which the conduct of the parties was thereafter governed, and further, that the execution of the note for $7,500 on September 14, 1927, was the result of a transaction which had no actual or legal connection with the original purchase of the $35,000 note and deed of trust from the appellants.

■ The evidence fully sustains the conclusion of the trial court that the defendants were not entitled to relief on their counterclaim. There was no evidence supporting the contention that Lunbeck was acting as the agent of the defendants. Even if he were, there is ample evidence in the record to justify the determination of the court that a new contract had been created by the parties, and that appellants had made it impossible by their action in causing the St. Albans lot to be transferred to Mrs. Lightburn, and in permitting her to transfer the lot in turn to Mrs. Miller, for the appellants to reconvey the St. Albans lot by deed of trust to respondent, or for him to make a loan thereon. ·

■ It was not error for the trial court to permit parol testimony to be introduced as to the contents of the contract of March 8th. A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise. (Civ. Code, sec. 1698.) Proof was made that a written contract had been made, and that two copies had been executed; that demand had been made upon the appellants to produce the copy claimed to have been in their possession, and that the copy held by respondent had been surreptitiously taken from his files. The admission of the testimony as to the contents of the contract was proper under the provisions of section 1855 of the Code of Civil Procedure, and respondent's testimony as to the contents of the written instrument was amply corroborated.

The point has been made that the findings are in part inconsistent, and that the court failed to make findings

upon all the issues. The findings are unnecessarily prolix and involved, but upon an examination of the entire record, we are of the opinion that the court found upon all material issues, and that its findings are fully supported by the evidence. We consider it unnecessary, in view of the conclusions which we have expressed, to discuss the issues of agency advanced in the briefs of the respective parties.

It is ordered that the judgment be affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 15, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 14, 1932.